# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**WILLIE TRIPLETT (#100388)**                                              **CIVIL ACTION**

**VERSUS**

**JAMES LeBLANC, SECRETARY, ET AL.**                          **NO. 13-0243-JWD-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 5, 2015.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

WILLIE TRIPLETT (#100388)                                    CIVIL ACTION

VERSUS

JAMES LeBLANC, SECRETARY, ET AL.                        NO. 13-0243-JWD-RLB

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendants' Motion to Dismiss (R. Doc. 25).

This Motion is opposed.

The *pro se* plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"),

Angola, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983, 1985, 1986 and the

Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), against Secretary James

LeBlanc, Warden Burl Cain, Ass't Warden Troy Poret, Lt. Col. Chad Oubre, Major Willie

Richardson, Classification Officer Leroy Ervin, Dpty Warden Leslie Dupont, Outer Camp

Warden Joe Lamartiniere, Ass't Warden Cathy Fontenot, Inmate Minister Supervisor Stephanie

Lamartiniere, and Chaplains Robert Tony, Gary Summeral and Bernadine St. Cyr, complaining

that the defendants violated his constitutional and statutory rights in April, 2012, by issuing him

false and retaliatory disciplinary charges in response to his assertion of First Amendment rights.

The plaintiff further asserts that the defendants thereafter denied him procedural due process

during subsequent disciplinary proceedings, which proceedings resulted in his being found guilty

and sentenced to the working cellblocks, and also resulted in the loss of his trustee classification

and job as an inmate minister.  Finally, the plaintiff complains that the defendants' conduct

violated his right to equal protection because it was the result of an alleged wrongful policy and

was motivated by discriminatory animus in response to his race and religious beliefs.[1]

The defendants move to dismiss the plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Under this Rule, a Complaint is subject to dismissal if a plaintiff fails "to state a claim upon which relief can be granted." In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and more recently, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, *supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (internal quotation marks omitted).

---

1. An attempt by the United States Marshal's Office to serve defendant Bernadine St. Cyr at the offices of the Louisiana Department of Public Safety and Corrections ("DOC") has proven unsuccessful, specifically because this defendant is stated to be "not [a] DOC employee." *See* Rec. Doc. 16. Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the failure of a plaintiff to serve a defendant within 120 days of commencement of an action is cause for dismissal of that defendant from the proceeding. It is appropriate, therefore, that the plaintiff's claims asserted against Bernadine St. Cyr be dismissed, without prejudice, for failure of the plaintiff to timely effect service upon this defendant.

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (citation omitted).  Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).[2]

In his Complaint, as amended, the plaintiff alleges that on April 19, 2012, defendant Troy Poret called together a meeting of the LSP inmate ministers and informed the assembled group that any ministers who had not attended a scheduled church call-out on the previous Wednesday would be re-assigned to the prison farm line until defendant Poret "felt [the inmates] were ready to do [their] jobs."  The plaintiff asserts that he raised his hand and stated that he had not known that attendance at the referenced call-out was mandatory because it was but one of many such "church call[s] every night," and he did not know that that specific call-out was obligatory, to which comment defendant Poret responded in a hostile manner.  Later, at the close of the meeting, the plaintiff allegedly approached defendant Poret and advised the defendant that the

_____

2.  In determining whether to grant a motion to dismiss, a district court generally considers only the allegations of the well-pleaded Complaint, as amended, and does not consider documentation "outside the complaint." *Scanlan v. Tex. A&M University*, 343 F.3d 533, 536 (5th Cir. 2003).  When ruling on a motion to dismiss in a case filed by a *pro se* plaintiff, however, a district court may consider documents attached to the plaintiff's Complaint and those materials subsequently filed. *Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983).  *See also Clark v. Huntleigh Corp.*, 119 Fed. Appx. 666, 667 (5th Cir. 2005) (finding that because of the plaintiff's *pro se* status, "precedent compels us to examine all of his complaint, including the attachments").

defendant should not assign the plaintiff to the farm line because the plaintiff had a permanent duty status "out of the field." In response, defendant Poret instructed defendant Chad Oubre to escort the plaintiff to administrative segregation and to "lock him up" in connection with an unspecified disciplinary charge. The plaintiff asserts that defendant Oubre then utilized abusive language while escorting the plaintiff to administrative segregation, making racial slurs and threatening the plaintiff with physical harm, and also refused to allow the plaintiff to pack his personal property, resulting in potential loss or damage thereto.

In addition to the foregoing, the plaintiff also complains regarding the handling of the disciplinary charges that were levied against him on April 19, 2012, and of the handling of his ensuing disciplinary appeal proceedings and administrative grievance proceedings. According to the plaintiff, defendant Willie Richardson presided over the plaintiff's disciplinary board hearings conducted on April 23 and 25, 2012, and failed to provide appropriate procedural due process protections by failing to provide the plaintiff with sufficient advance notice of the charges and by failing to grant motions made by the plaintiff during the hearing, including motions to face his accusers, to call witnesses and to take a polygraph test. Instead, defendant Richardson wrongly found the plaintiff guilty of the charges ("Defiance" and "Aggravated Disobedience") and sentenced the plaintiff to a transfer to the working cellblocks. Whereas the plaintiff asserts that he filed a disciplinary appeal in connection with the alleged wrongful disciplinary charges and also submitted one or more administrative grievances to prison officials, complaining of the foregoing misconduct of prison officials, he complains that his appeal and administrative proceedings were mis-handled and were insufficiently investigated, and that the appeal was ultimately improperly denied by the defendants. In addition, the plaintiff complains of his continued confinement whereas other inmate ministers were allowed to return to their

assigned jobs.

Finally, the plaintiff complains that all defendants have engaged in a conspiracy to violate his constitutional rights and that defendant Burl Cain has implemented a wrongful "religious policy" at LSP, pursuant to which the defendant "forc[es] inmates to attend Christian services under threat of loss of trustee status [and] prison jobs." R. Doc. 4 at p. 2.

Initially, the Court notes that the plaintiff includes an assertion in his Complaint that the defendants' actions constitute a violation of the ADA. In this regard, "[t]he ADA is a federal anti-discrimination statute designed '[t]o provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" *Delano-Pyle v. Victoria County, Texas*, 302 F.3d 567, 574 (5th Cir. 2002), *quoting Rizzo v. Children's World Learning Centers, Inc.*, 173 F.3d 254, 261 (5th Cir. 1999). Title II of the ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. It has been found that "the plain text of Title II of the ADA unambiguously extends to state prison inmates." *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 213 (1998). Notwithstanding, punitive damages may not be awarded in private suits brought under the ADA, *Barnes v. Gorman*, 536 U.S. 181, 189 (2002), and "[a] plaintiff asserting a private cause of action for violation of the ADA ... may only recover compensatory damages upon a showing of intentional discrimination." *Delano-Pyle v. Victoria County, Texas, supra*, 302 F.3d at 574. In order to establish a violation of the ADA, therefore, the plaintiff must be able to demonstrate (1) that he is a qualified individual within the meaning of the Act, (2) that he is being excluded from participation in or being denied the benefits of services, programs, or activities for which the

defendants are responsible, or is otherwise being discriminated against by the defendants, and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability. *Lightbourn v. County of El Paso, Texas*, 118 F.3d 421, 428 (5ᵗʰ Cir. 1997).

Applying the foregoing standard, it is abundantly clear that the plaintiff has not stated a claim relative to any violation of the ADA. Whereas the plaintiff complains that defendant Troy Poret expressed an intent to re-assign the plaintiff and other inmate ministers to the LSP farm line on April 19, 2012, and whereas the plaintiff asserts that such re-assignment would have resulted in a violation of the plaintiff's out-of-field duty status, the plaintiff's allegations make clear that he was not in fact re-assigned to the farm line. Instead, the plaintiff was placed in segregated confinement and was later sentenced to the working cell-blocks where he was apparently assigned indoor jobs as a tier-walker and, later, as a kitchen worker. *See* R. Doc. 29 at p. 6.[3] In addition, the plaintiff has not identified any qualifying disability with which he suffers, and he has not identified any services, programs or activities that have been denied to him by reason of such disability. Thus, his allegations in no way implicate the protections afforded by the ADA, and this aspect of the plaintiff's case is subject to dismissal.

Turning to the plaintiff's claims regarding alleged constitutional violations, the Court initially notes that the plaintiff has asserted these claims against the defendants in both their individual and their official capacities, and the defendants seek dismissal of the plaintiff's claims for monetary damages asserted against them in their official capacities. In this regard, the

---

3. Whereas the plaintiff contends that these job assignments were also in violation of his assigned duty status, because the tier walker assignment allegedly required too much walking and because the kitchen assignment allegedly required too much lifting, these complaints amount to mere disagreement with his duty status assignments by classification officers and do not amount to claims of purposeful discrimination by reason of his alleged disability, which is a prerequisite for a violation of the ADA.

defendants are correct that § 1983 does not provide a federal forum for a litigant who seeks the recovery of monetary damages against a state official acting in an official capacity, specifically because such an official is not seen to be a "person" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). In addition, in *Hafer v. Melo*, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id.* at 25. Accordingly, the plaintiff's claim asserted against the defendants in their official capacities for monetary damages is subject to dismissal. In contrast, the plaintiff's claim form monetary damages asserted against the defendants in their individual capacities remains theoretically viable because a claim asserted against a state official in an individual capacity, seeking to impose liability for actions taken under color of state law, is not treated as a suit against the state. *Id.* at 29. In addition, the plaintiff's claim for prospective injunctive relief asserted against the defendants in their official capacities is not prohibited under the Eleventh Amendment because such a claim is also not seen to be a claim against the state. *See Will v. Michigan Department of State Police, supra*, 491 U.S. at 71 n. 10; 15 *Am. Jur. 2d Civil Rights* § 101.

Turning to a review of the plaintiff's claims that are not barred by the Eleventh Amendment, the Court next agrees with the defendants that the plaintiff is barred from the recovery of compensatory damages in this case by reason of 42 U.S.C. § 1997e(e). Pursuant to this statute, a prisoner plaintiff is prohibited from recovering compensatory damages for mental or emotional injury in the absence of some showing of physical injury. The plaintiff has not sufficiently alleged that he has sustained any physical injury as a result of the defendants'

purported wrongdoing.[4]  Accordingly, this aspect of the plaintiff's claim must be rejected. Whereas the plaintiff might still be able to recover nominal or punitive damages, he would be required to make a showing that the defendants intentionally violated his constitutional rights. *See Hutchins v. McDaniels*, 512 F.3d 193, 198 (5th Cir. 2007).

The Court next concludes that several of the plaintiff's claims asserted against the defendants do not rise to the level of constitutional violations.  Initially, whereas he complains that defendant Oubre utilized threatening and racially offensive language while escorting the plaintiff to administrative segregation on April 19, 2012, the law is clear that allegations regarding mere threats and verbal abuse, even if true, do not state claims of constitutional significance.  *See Orange v. Ellis*, 348 Fed. Appx. 69, 72 (5th Cir. 2009); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983).  Similarly, the plaintiff's claim that he suffered humiliation as a result of the defendants' conduct and that his reputation within the prison community has been damaged are not claims of constitutional dimension.  Courts have repeatedly held that injury to reputation, without more, is not a liberty interest protected under the Fourteenth Amendment to the United States Constitution.  *See Paul v. Davis*, 424 U.S. 693, 711-12 (1976).  *See also Siegert v. Gilley*, 500 U.S. 226, 233-34 (1991).  Accordingly, the plaintiff's claim in this regard is also subject to dismissal as being without legal foundation.

The plaintiff also complains that defendant Oubre failed to allow the plaintiff to pack his property on April 19, 2012, before escorting the plaintiff to administrative segregation.  The

---

4.  The plaintiff seeks to avoid the limitation imposed upon recovery by 42 U.S.C. § 1997e(e) by asserting that, upon being sentenced to the working cellblocks, he was assigned to an upper bunk that "aggravated his back injury climbing up and down."  *See* R. Doc. 29 at p. 5. The Court finds that this claim of physical injury is too attenuated from the alleged wrongdoing of defendants Poret and Oubre on April 19, 2012, and does not support the plaintiff's claim of physical injury resulting from the defendants' conduct.

plaintiff asserts that, as a result, he is entitled to "be compensated for any loss of property" that may have been sustained as a result. *See* R. Doc. 1 at p. 10. There are two principal problems with this assertion. First, the plaintiff does not allege that any property has in fact been lost, stolen or mis-handled as a result of defendant Oubre's conduct, only that a loss of property may have occurred. Accordingly, this claim is entirely speculative and does not establish that the plaintiff has suffered any loss or damage in fact as a result of the defendants' conduct. Second, pursuant to well-established federal jurisprudence, an unauthorized negligent or even intentional wrongful deprivation of property by state employees does not amount to a violation of the procedural requirements of due process if a meaningful post-deprivation remedy for the loss is available. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 542 (1981).[5] Further, the burden is on the complainant to show that available post-deprivation remedies are not adequate. *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984). In the instant case, the plaintiff has not alleged that state post-deprivation remedies are unavailable to him or are inadequate. To the contrary, it is recognized that Louisiana law provides ample remedies under which the plaintiff could have proceeded against the defendants for recovery of his property or for reimbursement for its loss. *Id.* at 763. Accordingly, the plaintiff's claim relative to an alleged loss of property is without constitutional merit and should be dismissed.[6]

The plaintiff also complains regarding the issuance of false disciplinary charges against

---

5. The underlying rationale of *Parratt* and *Hudson* is that when deprivations of property are effected through either negligent or intentional wrongful conduct on the part of state employees, pre-deprivation procedures are simply "impracticable" since the state cannot know in advance when such deprivations will occur. *Hudson v. Palmer, supra*, 468 U.S. at 533.

6. The same analysis is applicable in connection with the plaintiff's claim that he suffered a loss of wages as a result of his lost job assignment as an inmate minister.

him on April 19, 2012, by defendants Poret and Oubre, of the denial of due process during

subsequent disciplinary proceedings, and of the wrongful finding of guilt and imposition of

punishment thereafter.  These claims, however, fail to state claims of federal constitutional

dimension cognizable under 42 U.S.C. § 1983.  Initially, the law is clear that the mere issuance

of one or more false disciplinary reports and the imposition of resulting punishment, without

more, does not amount to a constitutional violation.  *See Collins v. King*, 743 F.2d 248, 253-54

(5th Cir. 1984).  Further, although the plaintiff complains of alleged procedural deficiencies

during his disciplinary proceedings, through the alleged failure to provide him with a timely

copy of the pertinent disciplinary reports and through the alleged failure to grant his motions,

*inter alia,* to face his accusers and for a lie detector test, the United States Supreme Court has

found that the procedures attendant to prison disciplinary proceedings do not implicate any

constitutionally protected liberty interest unless the resulting punishment has subjected an inmate

to an atypical and significant deprivation (evaluated in the context of prison life) in which the

state might conceivably have created a liberty interest for the benefit of the inmate.  *Sandin v.*

*Conner*, 515 U.S. 472, 486 (1995).  The *Sandin* Court found that a disciplinary sentence of a

housing change to segregated confinement was not so atypical as to give rise to a claim of the

violation of procedural due process.  *Id.*  This Court similarly concludes that the plaintiff's

disciplinary punishment in this case, of a custody change to the working cellblocks, did not

result in such an atypical and significant deprivation as to support a due process claim.  *See*

*Dickerson v. Cain*, 241 Fed. Appx. 193, 194 (5th Cir. 2007) (finding that placement in segregated

confinement at LSP was not an "atypical or significant hardship")*; Lewis v. Dretke,* 54 Fed.

Appx. 795, 2002 WL 31845293 (5th Cir. Dec. 11, 2002) (finding that an inmate's loss of trustee

status and other deprivations resulting from allegedly false disciplinary charges did not present

"an atypical or significant hardship"); *Day v. Lensing*, 48 Fed. Appx. 105, 2002 WL 31017145

(5th Cir. Aug. 20, 2002) (same); *Marx v. Stephens*, 2014 WL 6453610 (S.D. Tex. Nov. 17, 2014)

(same).  Thus, the plaintiff may not be heard to complain regarding the alleged false disciplinary

charges issued by defendants Poret and Oubre or regarding any asserted procedural deficiencies

occurring in connection with the subsequent finding of guilt and the imposition of punishment

thereafter.

       In addition, the plaintiff complains regarding the handling of his administrative and

disciplinary appeal proceedings and of the failure of prison officials to conduct an adequate

inquiry or investigation into the claims asserted in those proceedings.  However, an inmate does

not have a claim cognizable in this Court relative to the mishandling or denial of prison

administrative or disciplinary proceedings.  Specifically, the plaintiff does not have a

constitutional right to have such claims properly investigated, handled, or favorably resolved,

*Mahogany v. Miller*, 252 Fed. Appx. 593, 595 (5th Cir. 2007), and there is no procedural due

process right inherent in such a claim.  As stated by the United States Court of Appeals for the

Fifth Circuit in *Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005) (in the context of the handling of

an administrative grievance):

> Insofar as [the plaintiff] seeks relief regarding an alleged violation of his due process
> rights resulting from the prison grievance procedures, the district court did not err in
> dismissing his claim as frivolous.... [The plaintiff] does not have a federally protected
> liberty interest in having these grievances resolved to his satisfaction.  As he relies on a
> legally nonexistent interest, any alleged due process violation arising from the alleged
> failure to investigate his grievances is indisputably meritless.

*Id.* at 373-74.  This conclusion is equally applicable in the context of prison disciplinary

proceedings.  *See, e.g., Sanchez v. Grounds*, 2014 WL 1049164, *2 (E.D. Tex. Mar. 14, 2014)

(finding that an inmate's claim regarding a failure to conduct a 'proper investigation" of a

disciplinary charge "did not amount to a constitutional deprivation"); *Jackson v. Mizell*, 2009 WL 1792774, *7 n. 11 (E.D. La. June 23, 2009), *affirmed*, 361 Fed. Appx. 622 (5th Cir. 2010) (noting that "the Court fails to see how a prisoner could ever state a cognizable claim alleging an inadequate disciplinary investigation"). Accordingly, the plaintiff's claim relative to the handling and/or denial of his administrative grievance and disciplinary appeal proceedings is without legal or factual foundation and should be dismissed.

Notwithstanding the foregoing, the plaintiff also complains that the referenced disciplinary reports and the subsequent punishment were undertaken in retaliation for (1) the exercise of his First Amendment right to complain to prison officials and oppose defendant Poret's plan to re-assign inmate ministers to the LSP farm line and re-assign the plaintiff to work that violated his "out of field" duty status, and/or (2) the exercise of his First Amendment religious right not to attend a church call-out. This claim also must fail. In this regard, the taking of action against an inmate in retaliation for the inmate's exercise of constitutional rights may itself amount to a violation of the inmate's constitutional rights. *Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995). Claims of retaliation by prison inmates, however, are regarded with skepticism, lest the federal courts potentially embroil themselves in every adverse action that occurs within a penal institution. *Id.* at 1166. Accordingly, to prevail on a claim of retaliation, a prisoner must be able to establish (1) that he was exercising or attempting to exercise a specific constitutional right, (2) that the defendant intentionally retaliated against the prisoner for the exercise of that right, (3) that an adverse retaliatory action, greater than *de minimis*, was undertaken against the prisoner by the defendant, and (4) that there is causation, *i.e.*, that but for the retaliatory motive, the adverse action would not have occurred. *Morris v. Powell*, 449 F.3d

682, 684 (5th Cir. 2006). *See also Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). If an inmate is unable to point to the exercise of a specific constitutional right, his claim will fail as a matter of law. *See Tighe v. Wall*, 100 F.3d 41 (5th Cir. 1996) (dismissing an inmate's claim for failure to demonstrate the exercise of a specific constitutional right); *Woods v. Smith, supra*, 60 F.3d at 1166 (observing that, "[t]o state a claim of retaliation an inmate must allege the violation of a specific constitutional right"). Further, the inmate must allege more than a mere personal belief that he is the victim of retaliation. *Jones v. Greninger, supra,* 188 F.3d at 325; *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). Finally, to demonstrate the requisite retaliatory intent on the part of a defendant, the inmate must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly by inferred. *Woods v. Smith, supra,* 60 F.3d at 1166.

In the instant case, the plaintiff's claim of retaliation fails as a matter of law. First, although he asserts that he was retaliated against for objecting to defendant Poret's plan to transfer inmate ministers to the LSP farm line, this assertion does not implicate the exercise of any specific constitutional right. The plaintiff does not have a constitutional right to a particular job or housing assignment while confined in prison, *see, e.g., Cotton v. Hargett*, 68 F.3d 465 (5th Cir. 1995) (job assignment), *Barber v. Quarterman*, 437 Fed. Appx. 302 (5th Cir. 2011) (housing location), and so he had no constitutional right to complain regarding defendant Poret's proposed re-assignment. Nor is the plaintiff's assertion of his First Amendment right to complain to prison officials concerning alleged wrongful conduct sufficient to support his retaliation claim in this case. Although the plaintiff asserts that he was exercising his constitutional right to seek

redress of grievances when he opposed defendant Poret's planned re-assignment, an inmate's right to complain to supervising officials regarding alleged misconduct is limited to complaints which are made through "proper channels." *See Hanna v. Maxwell*, 415 Fed. Appx. 533, 536 (5th Cir. 2011) (rejecting an inmate's claim of retaliation where the alleged retaliation was not in response to complaints made through proper channels); *Morris v. Powell, supra*, 449 F.3d at 684; *Sanchez v. Allen*, 2013 WL 5829156, *1 (E.D. Tex. Oct. 29, 2013) (same); *Rankin v. Pearson*, 2013 WL 1305517, *4 (S.D. Miss. Mar. 26, 2013) (same). In the instant case, the plaintiff does not assert that he was retaliated against for filing an administrative grievance. Instead, he asserts that he was retaliated against for speaking out at a meeting convened by defendant Poret.[7] This does not appear to be an assertion of a complaint through "proper channels" so as to support a claim of retaliation. *See Thomas v. Thomas*, 46 Fed. Appx. 732, *1 (5th Cir. 2002).

In addition to the foregoing, the plaintiff also contends in this case that the referenced disciplinary charges and punishment were undertaken in retaliation for his First Amendment right to freely exercise his religion. The facts alleged in his Complaint, however, belie this contention. The Free Exercise Clause of the First Amendment, as applied to the states through the Fourteenth Amendment, prohibits conduct which unreasonably impinges upon the free exercise of an inmate's religious beliefs. While inmates retain their First Amendment religious rights notwithstanding their incarcerated status, the exercise of these rights is subject to

---

7. The plaintiff makes reference in his amended complaint to an administrative grievance that he filed in April, 2013, wherein he complained of defendant Poret's failure to accede to a request for restoration of the plaintiff's job assignment and trustee status. *See* R. Doc. 4 at p. 7. The plaintiff does not allege, however, that he was retaliated against *in response to* that grievance.

reasonable restrictions and limitations necessitated by penological goals. *O'Lone v. Shabazz*, 482 U.S. 342, 349 (1987). *See also Baranowski v. Hart*, 486 F.3d 112, 120 (5ᵗʰ Cir. 2007), *citing Turner v. Safley*, 482 U.S. 78, 89 (1987). A prison action or regulation that impinges upon an inmate's First Amendment constitutional rights is valid if it is reasonably related to legitimate penological interests. *Turner v. Safely, supra,* 482 U.S. at 89.

The crux of the plaintiff's claim of retaliation in this case – in the context of religion – is that be believes that it was unfair for defendant Poret to punish the inmate ministers for failing to attend a scheduled church call-out. The plaintiff concedes, however, that his job assignment at the prison was as an inmate minister, which assignment, by definition, included attending to the religious and spiritual needs of fellow inmates. This is the job assignment that the plaintiff had worked to attain at LSP and that he admittedly wished to keep.[8] It is reasonable to assume that this job assignment also included regular attendance at religious functions, services and meetings within the prison. The plaintiff makes no assertion in this case that he failed or refused to attend the referenced call-out on religious grounds, that he complained to prison officials before-hand that he did not wish to attend the call-out, or that his attendance at the call-out would have violated the tenets of his religious beliefs or offended his religious sensibilities. All that he alleges is that he did not know before-hand that defendant Poret believed the call-out to be obligatory for inmate ministers and that a failure to attend would have disciplinary implications. In the Court's view, this contention does not implicate the plaintiff's First Amendment religious

---

8. The plaintiff alleges that he attended the New Orleans Baptist Theological Seminary Extension Center, located at LSP, and graduated with bachelor and associate degrees in Christian ministry in 2005, earning a job assignment as an inmate Christian minister with trustee status and with the highest allowable inmate wage of $0.20 per hour. *See* R. Doc. 1 at p. 6.

rights, any more than would disciplinary action for any inmate who failed to attend an obligatory

function that related to the inmate's job assignment at LSP.  Instead, the plaintiff is attempting in

this case to shoe-horn a simple garden-variety claim of disciplinary action into an assertion of his

constitutional right to the free exercise of religion.  This the Court will not condone.

Accordingly, the plaintiff's claim regarding alleged retaliation in response to his exercise of

religious rights should be dismissed as being without constitutional merit.[9]

       In addition, the plaintiff has failed to allege facts that support an equal protection claim

based upon discrimination in response to his race or religion in this case.  In this regard, the

Equal Protection Clause of the Fourteenth Amendment requires essentially that all persons

similarly situated be treated alike.  *See Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir.

1996).  In order to successfully plead an equal protection claim, however, an inmate plaintiff

must allege and show that he is a member of a specific group and that prison officials have acted

with a discriminatory purpose because of such membership.  A discriminatory purpose "implies

that the decision maker singled out a particular group for disparate treatment and selected his

course of action at least in part for the purpose of causing its adverse effect on an identifiable

group." *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001), *quoting Lavernia v. Lynaugh*, 845

F.2d 493, 496 (5th Cir. 1988).  An inmate cannot base an equal protection claim solely on a

personal belief that he has been a victim of discrimination.  *Woods v. Edwards,* 51 F.3d 577, 580

(5th Cir. 1995).  Specifically, vague and conclusory allegations are insufficient to support an

---

       9.  To the extent that the plaintiff is asserting a complaint regarding the planned transfer
of other inmate ministers to the LSP farm line, this claim is not properly before the Court.  A *pro
se* litigant does not have standing to assert the civil rights of third parties injured by the
defendants' alleged unlawful conduct.  *See Coon v. Ledbetter*, 780 F.2d 1158, 1160 (5th Cir.
1986).

equal protection claim. *See Pedraza v. Meyer*, 919 F.2d 317, 318 n. 1 (5th Cir. 1990).

In the instant case, all that the plaintiff has factually alleged is that LSP inmate ministers were called together by defendant Poret on April 19, 2012, and that the defendant announced that *all* inmate ministers who had not attended a recent call-out would be re-assigned to the prison farm line until the defendant believed that the inmates would be willing to perform their assigned job duties. The plaintiff fails to allege that defendant Poret targeted any particular inmates at the meeting because of their race, their ethnicity or their particular religious beliefs. Nor does the plaintiff allege – other than in a conclusory fashion – that he himself was targeted for these reasons. Rather, the plaintiff was simply included in a group of inmate ministers who were going to be transferred to the prison farm line, and he was then subjected to disciplinary action, not because of his race or religious beliefs, but because of his vocalized opposition to the planned transfer. Further, although the plaintiff complains that he was thereafter maintained in segregated confinement for a longer period than were the other inmate ministers, his allegations make clear that he was not in fact similarly situated to those other inmates. Specifically, the plaintiff does not allege that any other inmate ministers were charged with and found guilty of rule violations associated with the referenced meeting or were sentenced to the working cellblocks as a result. Accordingly, the plaintiff fails to state a claim regarding the violation of his right to equal protection simply because other inmate ministers were allegedly allowed to return to their job duties whereas he was not. *See Woods v. Edwards,* 51 F.3d 577, 580 (5th Cir. 1995) (rejecting an inmate's equal protection claim that he was maintained in segregated confinement while other inmates were released). Accordingly, the plaintiff's vague and conclusory allegation that he was treated differently is not a sufficient foundation upon which to

base a claim that prison officials intentionally singled him out, as a member of a particular group, for disparate treatment based on his race or religion. Accordingly, this claim does not rise to the level of a constitutional violation and must be dismissed.

In addition to the foregoing, the plaintiff seeks to impose liability upon numerous supervisory prison officials, specifically because of their alleged failure to supervise and/or train subordinate officers, failure to intervene upon learning of the purported constitutional violations, participation in a conspiracy to violate the plaintiff's constitutional rights, and creation and implementation of an alleged unconstitutional policy. Ultimately, however, the Court finds that the plaintiff's assertions in this regard are conclusory and do not survive the defendants' motion to dismiss. In this regard, in order for a prison official to be found liable under § 1983, the official must have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith*, *supra* 718 F.2d at 768. Any allegation that the named defendants are responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983. *See Ashcroft v. Iqbal*, *supra*, 556 U.S. at 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability"). Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must allege that the deprivation of his constitutional rights has occurred as a result of a subordinate's implementation

of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law. *Lozano v. Smith*, *supra*, 718 F.2d at 768.

In seeking to avoid the preclusive effect of the above-stated rule, the plaintiff asserts that the numerous supervisory officials named as defendants herein are liable for their alleged failure to train and/or supervise subordinate officers, for engaging in a conspiracy to violate the plaintiff's constitutional rights, and for creating and/or implementing an alleged unconstitutional policy. These assertions, however, are entirely conclusory and are not sufficient to withstand a motion to dismiss. In *Ashcroft v. Iqbal, supra*, 556 U.S. 662, the Supreme Court addressed a federal inmate's claim asserted against supervisory United States officials (the United States Attorney General and the Director of the Federal Bureau of Investigation) that he had been subjected to an unconstitutional discriminatory policy based upon both his race and religion. In ultimately rejecting this claim in the context of a motion to dismiss, the Court stated:

> Respondent pleads that petitioners "knew of, condoned, and willfully and maliciously agreed to subject [him] to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and /or national origin and for no legitimate penological interest.... The complaint alleges that [the Attorney General] was the "principal architect of this invidious policy, ... and that [the Director of the F.B.I.] was "instrumental" in adopting and executing it.... These bare assertions, much like the pleading of conspiracy in [*Bell Atlantic Corp. v.*] *Twombly,* [550 U.S. 544 (2007)], amount to nothing more than a "formulaic recitation of the elements" of a constitutional discrimination claim, ... namely that petitioners adopted a policy "'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." ... As such, the allegations are conclusory and not entitled to be assumed true.

556 U.S. at 680-81. In the instant case, similarly, the plaintiff alleges primarily that supervisory officials were aware of the purported unconstitutional actions taken against hin in April, 2012, that the defendants took no action to intervene, that they failed to train and supervise subordinate officers, and that they participated in a conspiracy to violate the plaintiff's constitutional rights

by condoning or implementing defendant Cain's alleged discriminatory policy of forcing inmates to attend church services on pain of disciplinary action. As explained above, however, the plaintiff's allegations of fact do not support a finding that he was subjected to disciplinary action because of an alleged discriminatory policy. Instead, he was threatened with disciplinary action because, as a member of a group of inmate ministers (not limited to inmate ministers of any particular race or religious belief), he failed to attend a church call-out, and he was then in fact subjected to disciplinary action, not because of an alleged policy or because of his race or religion, or even because he failed to attend the referenced call-out, but because he spoke out against the proposed disciplinary action.[10] These allegations of fact do not support his conclusory assertions regarding the existence of an allegedly discriminatory policy, a conspiracy to violate his constitutional rights, a failure to intervene, or a failure to train or supervise subordinate officers, and they do not support a finding that the plaintiff was subjected to discrimination in fact based upon his race or religious beliefs. Accordingly, the Court finds that the plaintiff has failed to state a claim upon which relief may be granted based upon these assertions against the named supervisory defendants.[11]

_____

10. Attached to the plaintiff's amended complaint is a copy of a First Step Response to his administrative grievance, wherein it is noted that the plaintiff was issued disciplinary reports on April 19, 2012, "for refusing to stop talking during a meeting in the Chapel." *See* R. Doc. 4-2 at p. 11.

11. The Court also finds that the plaintiff's invocation of 42 U.S.C. §§ 1985 and 1986 is misplaced. Specifically, as stated herein, the plaintiff's allegations regarding the existence of a conspiracy that is violative of 42 U.S.C. § 1985 are entirely conclusory, and the law is clear that "[c]onclusory allegations of conspiracy do not suffice" to state a claim under this statute. *See, e.g., Harmon v. Broussard*, 2014 WL 7335327, *9 (W.D. La. Dec. 18, 2014). Further, inasmuch as a cause of action under the latter statute, 42 U.S.C. § 1986, requires a showing of the existence of a conspiracy under § 1985, *see Irwin v. Veterans Administration,* 874 F.2d 1092, 1095-96 (5th Cir. 1989), the plaintiff's reliance upon this latter statute is also unsupported.

Finally, to the extent that the plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this court over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, having considered the allegations of the plaintiff's Complaint and having recommended that the plaintiff's federal claims be dismissed, the Court further recommends that the exercise of supplemental jurisdiction be declined.

<u>RECOMMENDATION</u>

It is recommended that the Court decline the exercise of supplemental jurisdiction over the plaintiff's state law claims and that the plaintiff's claims asserted against defendant Bernadine St. Cyr be dismissed, without prejudice, because of the plaintiff failure to serve this defendant within 120 days as mandated by Fed. R. Civ. P. 4(m). It is further recommended and that the defendants' Motion to Dismiss (R. Doc. 25) be granted, dismissing the plaintiff's claims asserted herein, with prejudice, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on February 5, 2015.


**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**